IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, vs. ALVIN STANLEY BRIGGS, JR., **Defendant**. | Case No. CR13-1004 ORDER FOR PRETRIAL DETENTION |

On the 27th day of March, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On March 20, 2013, Defendant Alvin Stanley Briggs, Jr. was charged by Indictment (docket number 2) with distribution of heroin resulting in death (Count 1) and distribution of heroin (Counts 2, 3, 4, and 5). At the arraignment on March 25, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on May 20, 2013.

At the hearing, Detective Matt Harcus of the Platteville, Wisconsin, Police Department, testified regarding the circumstances underlying the instant charge of distribution of heroin resulting in death (Count 1). On July 4, 2012, the Platteville Police Department began investigating a suspicious death, involving S.R. A 911 call at 2:56 a.m. reported an intoxicated man lying in a yard. When police arrived, CPR was being performed on S.R. Eventually, S.R. was taken to the hospital where he was pronounced dead. An autopsy revealed that S.R.'s cause of death was "acute application of heroin."

Law enforcement obtained S.R.'s cell phone. Text messages at around 7:30 p.m. on July 3, 2012 suggest that S.R. set up a purchase of heroin for $100 from Defendant.

S.R.'s girlfriend, Katie Withrow, was interviewed by law enforcement. According to Withrow, on July 3, 2012, she and S.R. planned to go out to eat in Dubuque, Iowa. S.R. told Withrow that he needed to complete some business while they were in Dubuque. S.R. and Withrow went to a car wash, where they picked up an African-American male, later identified by Withrow as Defendant. All three of them went to a residence where they picked up another African-American male. The new individual gave Defendant a foil package, and Defendant gave one-half of the package to S.R. in exchange for $100.

On March 22, 2013, Detective Harcus interviewed Defendant. Defendant admitted knowing S.R. for 4 to 5 months prior to his death. Defendant also admitted selling heroin to S.R. on 4 or 5 different occasions, including on the evening of July 3, 2012, when Withrow was with S.R. However, Defendant denied selling S.R. the heroin that killed him. Defendant told officers that he had been selling heroin and crack cocaine for the past 4 to 5 years.

Dubuque Police Officer Ted McClimon testified regarding the circumstances underlying the instant charges of distribution of heroin (Counts 2, 3, 4, and 5).[1] On January 9, 2013, a controlled drug purchase was set up between a confidential informant ("CI") and Defendant. The CI called Defendant and set up a meeting at Defendant's residence. Law enforcement took the CI to Defendant's residence, where the CI purchased .11 grams of heroin from Defendant for $100. The controlled drug transaction was recorded and surveilled by law enforcement.

Law enforcement set up three additional controlled drug transactions, involving Defendant and a second CI. The three controlled transactions took place on January 29,

---

[1] McClimon is currently assigned to the Dubuque Drug Task Force.

2013, and February 1 and 6, 2013. In each instance, the CI called Defendant to set up the controlled transaction. Law enforcement took the CI to Defendant's residence, and the CI purchased heroin from Defendant. On January 29, the CI purchased .06 grams of heroin from Defendant for $50. On February 1, the CI purchased .07 grams of heroin from Defendant for $50, and on February 6, the CI purchased .04 grams of heroin from Defendant for $50.[2] All three controlled drug transactions were recorded and surveilled by law enforcement.

According to the pretrial services report, Defendant is 50 years old. He was born and raised in Chicago, Illinois. Defendant claims he moved to California in 1982, and moved to Dubuque, Iowa, in 1997. Defendant's mother resides in Chicago. Defendant has a half-brother and a sister who both live in Dubuque. Defendant has three other sisters who live in Chicago and Minnesota. Defendant told the pretrial services officer that for the past 5 months, he has lived with his brother in Dubuque. If released, however, Defendant stated that he intends to live with his sister in Dubuque.[3]

Defendant has never been married, but he has eight children, ages 14 to 27, from five separate relationships. His 14-year-old daughter lives in Chicago with her mother. Defendant's other children live in New York, Georgia, and California. Defendant told the pretrial services officer that he has operated his own car wash business for the past five months.[4]

---

[2] With regard to the February 1, 2013 controlled transaction, Defendant initially did not have heroin at his residence, and the CI had to return later to complete the transaction.

[3] Defendant's living arrangement with this sister was not verified by the pretrial services officer.

[4] According to Defendant, he earns $2700 per month from his car wash business, which consists of two power washers and an agreement with his landlord to use the property in the back of his apartment complex to perform his car wash duties.

Defendant is in good physical health. He reports no mental or emotional health concerns. Defendant told the pretrial services officer that except when he has been incarcerated, he has used a half gram of heroin on a daily basis for the past 10 years. Defendant's last use was on March 22, 2013, the date of his arrest on the instant federal charges.

Defendant has an extensive criminal record. On April 7, 1981, at age 18, Defendant was charged and later convicted of theft. He was placed on 1 year of probation. On May 2, 1981, while on probation, Defendant was charged with theft from an automobile and damage to property. That charge was stricken with leave to reinstate. In 1982, while on probation, Defendant was charged with aggravated assault. The disposition of that case is unknown. In April 1983, Defendant was charged and later convicted of burglary. He was sentenced to 3 years in prison.

On April 18, 1985, Defendant was charged with burglary. The disposition of that case is unknown. On May 11, 1985, Defendant was charged and later convicted of burglary and residential burglary. He was sentenced to 5 years in prison on the burglary charge and 3 years in prison on the residential burglary charge. He was paroled in October 1987. In August and October 1989, Defendant was charged in two separate cases with possession of a controlled substance. The disposition of those cases is unknown. However, in November 1989, Defendant's parole on the burglary charges was revoked and Defendant was sent back to prison. His sentence was discharged in March 1990. On May 7, 1992, Defendant was charged and later convicted of manufacture/delivery of a controlled substance. He was sentenced to 3 years in prison. He was paroled in October 1992.

In 1995, Defendant was charged in four separate cases with operating a vehicle without the owner's consent, possession of a stolen vehicle, theft of property, and possession of a stolen vehicle. The disposition of all of those charges is unknown.

4

On February 27, 1996, in Los Angeles, California, Defendant was charged and later convicted of disorderly conduct, solicitation of a lewd act. He was sentenced to 5 days in jail and 1 year of probation. On May 2, 1996, in California, and while on probation, Defendant was charged with the sale/transport of marijuana. Defendant was sentenced to 2 years in prison. While it is unclear when Defendant was paroled, the pretrial services report provides that Defendant violated his parole on six different occasions between 2004 and 2011. According to Defendant, the revocations result from him moving back to Iowa without his parole officer's permission.

On November 20, 1997, while on parole, Defendant was charged with burglary, possession of burglar tools, and criminal trespass. The disposition of that case is unknown. On December 8, 1997, while on parole, Defendant was charged with altering a VIN number, theft of property, not having a driver's license, and operating an uninsured motor vehicle. The disposition of that case is also unknown. On January 16, 1998, while on parole, Defendant was charged and later convicted in Chicago with receiving/possessing/selling a stolen vehicle. Defendant was sentenced to 6 years in prison. He was paroled in Illinois in June 2000. His Illinois parole was revoked in December 2000, and his sentence was discharged in January 2002.

In August 2002, while on parole in the California drug case, Defendant was charged with residential burglary. The disposition of that case is unknown. In 2004 and 2005, while on parole, Defendant was charged in separate cases with a local ordinance violation and burglary. The disposition of those cases is unknown.

On January 15, 2006, while on parole, Defendant was charged with trespass to land. The disposition of that case is unknown. On May 2, 2006, while on parole, Defendant was charged and later convicted of burglary. He was sentenced to 4 years and 6 months in prison. He was paroled in December 2007, but his parole was revoked in June 2008. His sentence was discharged in November 2008.

On June 1, 2009, while on parole, Defendant was charged and later convicted of possession of a controlled substance. On December 11, 2010, while on parole, Defendant was charged with criminal trespass to vehicle and driving with a suspended license. The disposition of that case is unknown.

On March 5, 2012, Defendant was charged and later convicted of two counts of possession of a controlled substance. In both counts, Defendant was given a 2-year suspended prison sentence and 1 year of probation. On September 18, 2012, a violation of probation was charged against Defendant. No court date has been set on the probation violation charge. The instant federal charges allegedly occurred while Defendant was on probation in the March 2012 charges.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on

7

probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with distribution of heroin resulting in death and distribution of heroin. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. On July 3, 2012, Defendant sold S.R. heroin for $100. In the early morning hours of July 4, S.R. died of a heroin overdose. S.R.'s girlfriend witnessed the drug transaction between Defendant and S.R.

on July 3. Defendant also admitted selling heroin to S.R. on July 3. Defendant was also involved in four separate controlled drug transactions on January 9 and 29, 2013, and February 1 and 6, 2013. On January 9, a CI set up a controlled transaction with Defendant. Law enforcement took the CI to Defendant's residence, and the CI purchased .11 grams of heroin from Defendant for $100. Similarly, a second CI set up controlled transactions with Defendant on January 29, and February 1 and 6. On each of those dates, law enforcement took the CI to Defendant's residence, and the CI purchased heroin from Defendant.[5] All four controlled drug transactions were recorded and surveilled by law enforcement.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results, and in this case did result, in an overdose and death. Defendant is an active heroin user. He has an extensive criminal record. Defendant also has a history of committing additional offenses while on probation and parole, and he was on probation at the time of these events. Defendant lacks a stable residence. If convicted, Defendant faces a mandatory minimum 10-year prison sentence. This is a factor regarding the likelihood he will appear. Based on the serious nature of the offense, all of the facts and circumstances, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community or Defendant's appearance for court proceedings. Therefore, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions

---

[5] The CI paid $50 for .06, .07, and .04 grams of heroin in the three controlled transactions.

will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (March 25, 2013) to the filing of this Ruling (March 28, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 28th day of March, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA